## WHIPPLE v ORTLEPP

Ohio Appeals, 2nd Dist, Darke Co

Nos 433 & 434. Decided June 18, 1935

Billingsley & Manix, Greenville, for plaintiff.

Jesse K. Brumbaugh, Greenville, for defendant.

12

## OPINION

### By BODEY, J.

Counsel for the plaintiff presented their case on the theory that §3894 GC had application to this action. The lower court in its decision held that the action was instituted under favor of that section, which reads as follows:

"When a special assessment is made on real estate subject to a life estate, the assessment shall be payable by the tenant for life, but upon application by the life tenant to the court of competent jurisdiction, by action against the owner of the estate in fee, such court, may apportion the cost of the assessment between the life tenant and the owner in fee, in proportion to the relative value of the improvement to their estates, respectively, to be ascertained and determined by the court on principles of equity."

Counsel for the defendant call attention to the fact that this section appears in our Code under Title Twelve thereof, which is headed "Municipal Corporations." An examination of the history of this section discloses that it was enacted as a part of the Municipal Code of the State of Ohio by our Legislature in 1869, the original enactment being found in Vol. 66, Ohio Laws, page 241, §541. An examination of the original enactment as well as of the section as the same now appears in the General Code of Ohio leads us to believe that this section is applicable only to special assessments which are levied by a municipal corporation and that the same has no application when a life tenant seeks to have assessments pro-rated with his remainderman on farm real estate situated outside of a municipal corporation.

Although in our judgment there is no section of the statutes of Ohio which permits of the institution of an action such as this, we believe that the same may be maintained as a general action in equity. The general rule seems to be that a life tenant should pay all taxes and that he should likewise pay all assessments which are levied for the construction of improvements of a temporary nature and for improvements which are made for his especial benefit. On the other hand, if the improvements are permanent in their nature, or, if the entire benefit does not run to the life tenant alone, then the owner of the remainder should make contribution in proportion as his estate is benefitted. Note the following language as found in **Vol. 21 Corpus Juris, page 957:**

"An assessment for a public improvement is not an ordinary tax, and the question whether it must be borne by the life tenant or by the remainderman, or apportioned between the two, depends to a large extent upon the circumstances of the particular case, and especially upon the probable duration of the improvement as compared with the expectancy of life of the life tenant. If the assessment is for something in the nature of a permanent improvement of the whole estate it may be ratably and equitably divided between the tenant for life and the remainderman, but where the improvement is of a temporary character, calculated to benefit only the life interest, the assessment must be paid entirely by the life tenant. Where a part of the improvement is permanent and a part will have to be replaced within a short time, the life tenant is properly charged with the cost of that part of the improvement which is temporary and the remainderman with the balance."

We, therefore, dispose of this case under the general rules of equity as we do not believe that §3894 GC has an application here.

The evidence in this case discloses that some benefit will accrue to the owner of the remainder of this farm. We may take cognizance of the fact that under our law, before these improvements could be made, the County Commissioners must have found that they would be beneficial to the lands upon which assessments would afterward be levied. Indeed, it appears from the evidence that some benefit has already accrued to this farm because the same is in a much more tillable state than before. While no court should draw its conjectures, it seems to us that we are justified in holding that there is a lasting benefit to this farm on the theory that if a clean out is necessary within a period of from ten to twenty years, the same will be made. It is hardly to be presumed that any county or county board having jurisdiction would construct an improvement of this character and then permit the same to fall into disuse because of a failure to properly clean out if that becomes necessary in order to insure a complete and efficient operation of the original improvement. If a clean out of these ditches within a period of ten years may be made at a cost of not to exceed twenty-five per cent of the original improvement cost and if at that time the cleaned out condition will place the ditches in as good shape as they were when the original improvement was completed, then to be sure the benefit conferred upon this farm is permanent.

We have read the cases referred to by counsel in the various briefs. None of these cases is in conflict with what has already been said in this opinion of and concerning the permanency of this improvement. No person should be required to pay an assessment when he receives no benefit therefrom. All of the cases referred to by counsel are finally decided upon that proposition.

It appears from the evidence that the plaintiff is of the age of fifty-two years. The Superintendent of Insurance of the State of Ohio and The Tax Commission of Ohio, in determining the value of dower and life estates in questions presented to their various departments, adopt The American Experience Tables of Mortality.

Since use is made of these tables for the determination of inheritance tax and for the settlement of questions of insurance in this state, it seems to us that we could do no better than to employ The American Experience Table in our calculations. If a determination of the value of a life estate and a remainder be made under this table on the assumption that the life tenant is fifty-two years of age, it will be found and ascertained that the value of the life tenant's interest in a given piece of real estate is 67.35% of the whole and that the value of the remainder is 32.65% of the whole. This percentage will hold good irrespective of the value which may be placed upon a given piece of real estate. It seems to us that an equitable way of disposing of the question would be to assume that a clean out of these two improved ditches would be necessary within twenty years at an expenditure of twenty-five per cent of the original cost. As has heretofore been said, the County Surveyor estimated that a clean out could be had for twenty per cent of the original cost. However, we shall adopt the higher percentage rate as indicated by the witness, Hollinger. The assessments sought to be divided by this petition amount to $876.76. Twenty-five per cent of that amount is $219.19. In other words, if a clean out is made within the next twenty years it should be made for approximately this latter sum. Such a clean out would then bring the improvement up to its original completed and efficient state. If we may subtract the estimated cost of a clean out in the sum of $219.19 from the whole cost of $876.76, we will have remaining the sum of $657.57. In our judgment, this sum would represent the value in money of the permanent benefit to the real estate described in this petition which was effected by reason of the dredging of Greenville Creek and Mud Creek. The difference between the total assessment of $876.76 and $657.57, to-wit, the sum of $219.19, would represent the value in money of the temporary benefit to this same real estate, and that amount should be paid by the life tenant alone. According to the calculations which we have already made concerning the percentage of ownership, 67.35% of said sum of $657.57, to-wit, the sum of $442.88, which represents the value of the permanent benefit, should be paid by the life tenant and the balance thereof, or 32.65%, should be paid by the remainderman. A further calculation will indicate that 32.65% of $657.57 is $214.69. In our judgment the remainder estate is benefitted by the improvements of Greenville Creek and Mud Creek to this

amount. We believe that the calculations here made are founded in equity and that this amount should be paid by the defendant herein.

It will be the order, judgment and decree of the court therefore that the total assessments of $876.76 be apportioned as follows: the plaintiff, owner of the life estate, shall pay the sum of $662.07 and the defendant, owner of the remainder, shall pay the sum of $214.69. An entry may be drawn accordingly. Judgment is rendered accordingly. Exceptions are saved.

BARNES, PJ, and HORNBECK, J, concur.