**REIBOLD et v EVANS et**

Ohio Probate Court, Montgomery Co

Decided Dec 9, 1938

Munger & Kennedy, Dayton, for the Winters National Bank & Trust Co.

Smith, Schnacke & Compton, Dayton, for Winifred Reibold.

Joseph D. Chamberlain, Dayton, for Edwin Tenno Reibold, defendant.

## OPINION

By WISEMAN, J.

In case No. 78486-A the court is required to determine whether or not special assessments which have been paid out of the income of the life tenant should be apportioned between the life tenant and the remaindermen, and, if so, what portion of said assessment each should bear.

In case No. 78486-B, the court is required to allocate and adjust between Winifred Reibold, the life tenant, and the remaindermen, one-fourth of the total attorneys' fees allowed in a partition suit which was amicably settled between the parties without a sale.

The court finds that Louis Reibold died September 19, 1908. His last will and testament was executed in the year 1904, and was probated September 22, 1908. In a will construction suit in the Common Pleas Court of this county, the court found and decreed that there was devised and bequeathed to Louis S. Reibold a fee simple estate in an undivided one-fourth of the property known as the Reibold Building, which estate vested upon the death of the testator, Louis Reibold. The court further held that the estate devised to Louis S. Reibold was subject only to a trust created in the will of Louis Reibold, under the provisions of which the trustee was to retain control of the corpus for a period of twenty-five years after the death of Louis Reibold. The will of Louis Reibold provided that during the continuance of said trust the trustee was to take full charge of the real estate, manage and control the same, lease, rent, pay the taxes, repairs and fire insurance, etc. On August 1, 1924, the trustee entered into a lease with Thomas Elder, et al, which lease expired in September 1933, the date of the termination of the trust. In this lease the lessees agreed to pay all taxes and assessments, and in accordance therewith during the term of the lease, the lessees payed the Miami Conservancy assessments. Upon the termination of the trust, on September 19, 1933, a partition action was filed in the Common Pleas Court, in which a receiver was appointed who collected the rents and paid out of the rental income all taxes and assessments which became payable between September 19, 1933, and June, 1936. A new lease was entered into with the Elder & Johnston Company commencing January 1, 1937, for a period of twenty-five years, which provides in paragraph four that the lessee shall pay all taxes and assessments which have been or may be levied, assessed or charged against said premises after June 1936. Said lease specifically provides, in paragraph four, that "all of the payments described in this paragraph shall, to the extent that they are so made, be treated for all purposes as if so much additional rent had been paid by the lessee to the lessor, and the latter had made such payments out of such rents." In accordance with the provisions of the lease, the Elder & Johnston Company has paid all of the conservancy assessments due and payable since June, 1936.

The court finds that Louis S. Reibold died June 11, 1924, leaving a last will and testament in which he devised his one-fourth interest in the Reibold Building, which came to him under the will of Louis Reibold, to a trustee, and provided further that the trustee should pay the entire net income to his widow, Winifred Reibold, for life, and upon her death such property shall pass to

certain remaindermen. In Item Five of the will of Louis S. Reibold, he provides: "I do give and devise to my executor hereinafter named, all my title and interest under the will of my uncle, Louis Reibold, and otherwise in and to the following described real estate, * * * known as the 'Reibold Building', * * * to be held in trust nevertheless for the following purposes: Said executor shall have the entire management and control of said property so devised to it under this item, subject, of course, to the provisions of the will of my said uncle, with full power to lease same, to rent same, to collect the rents and pay the taxes, repairs and fire insurance, * * * pay the net income from said trust property under this item, to my wife, Winifred Reibold, in quarterly installments, during her natural life, or while she remains my widow."

The question for the court to determine is whether or not, under the wills of Louis Reibold and Louis S. Reibold, one-fourth of the Miami Conservancy assessments levied against the Reibold Building after the death of Louis S. Reibold, should be charged against the income of the life tenant or against the interest of the remaindermen. The power of the Probate Court to hear and determine this issue does not arise by virtue of the provisions of §3894 GC (See **Whipple v Ortlepp, 21 Abs 11**), inasmuch as this statute is not applicable but falls within the general jurisdiction of the Probate Court as provided by §10501-53 GC (par. 13).

Does the word "taxes" as used in the wills of Louis Reibold and Louis S. Reibold include Miami Conservancy assessments? Was the trustee under the will of Louis Reibold authorized to deduct the Miami Conservancy assessments from the income during the life of the trust? Is the trustee under the will of Louis S. Reibold authorized to deduct the amount of the Miami Conservancy assessments from the income in order to arrive at the net income due the life tenant, Winifred Reibold? The cardinal rule for the court to follow in a will construction suit is to ascertain the intention of the testator and to give effect thereto. The will of Louis Reibold was executed in 1904. He died in 1908, and his will speaks as of the date of his death. The Dayton flood occurred in 1913, five years after his death. Shortly thereafter the Miami Conservancy District was organized, and levied assessments against property in the district for the purpose of paying for the erection of dams in order to provide for flood prevention. The matter of payment of conservancy assessments could not have been in the mind of Louis Reibold, either at the time the will was executed or at the time of his death. Louis S. Reibold executed his will on April 28, 1924, and died June 11, 1924. His will was probated June 23, 1924. In his will, Louis S. Reibold places his one-fourth interest in the Reibold Building, being the same interest which came to him under the will of Louis Reibold, his uncle, in a trust, and with respect to the management and control of said trust, including the payment of taxes and the payment of the net income to the life tenant, makes a similar provision to that found in the will of Louis Reibold, and stipulates that the management and control of such interest shall be subject to the provisions of the will of his uncle. It is evident that Louis S. Reibold intended to charge the income of the life tenant with the same expenses of operation as were charged as operating costs under the terms of the will of Louis Reibold. The court concludes that the word "taxes" as used in the will of Louis Reibold did not embrace and was not intended to include assessments levied by the Miami Conservancy District. The court finds that Louis S. Reibold intended the trust under his will to operate in like manner as the trust under the will of Louis Reibold. The court finds no reported opinion in Ohio in which this legal question has been determined, but it has been held in other jurisdictions that where the will creates a life estate, and provides that the life tenant should bear the burden of taxes, repairs and insurance, the life tenant is not required to carry the entire burden of special assessments for paving and grading streets, installing sewers, and similar permanent improvements. Chambers v Chambers, 20 R. I. 370; Chamberlain v Gleason, 163 N. Y. 214; In Re Miner's Estate, 201 Mich. 115. In the case of Hospital Trust Company v Babbitt, 22 R. I. 113, wherein the will directed the trustee to pay out of the income "all taxes, rates, assessments and expenses for insurance and repairs, and other expenses or outgoings of every nature upon or in respect of the trust estate," and to pay over the residue to the sister of the testator for life, and on her death to divide the property and distribute it in fee, it was held that assessments levied for extending and laying out streets and installing sewers were not included in the word "assessments" as used in the will. the court on page 115 say:

"Though the word 'assessments' is broad enough to include such assessments as those in question, we are nevertheless of the opinion that, as used in the provision of the will above stated, it refers not to assessments of a permanent character, such as result from a new lay out of a street or the construction of sewers, but that it was merely an additional word employed by the testator to emphasize his intention to include all expenses which may be termed the current expenses of the trust estate. * * * Unless, therefore, the intention of the testator is sufficiently clear that the life tenant should bear the whole burden of assessments of the kind in question, which we do not think is the case in the present instance, the amounts of such assessments should be apportioned between the life-tenant and the remaindermen in the manner stated."

In the case of Chambers v Chambers, the court held that the word "taxes" as used in the will did not include assessments for installing sewers and curbing, the court on page 371 say:

"We do not think, however. that assessments like these in question, though popularly spoken of as taxes, are to be regarded as taxes within the meaning of the will. They are exceptional and extraordinary in their character, being expenses for improvements of a permanent nature, rather than the usual current expenses which are provided for by ordinary taxes. * * * We find nothing in the will to indicate that the testator intended to include any other than the usual and ordinary taxes in the requirement that his wife should pay all necessary taxes and repairs on the property."

In Chamberlain v Gleason, wherein the will provided that the wife should pay all taxes assessed against the property during her lifetime, it was held that street paving assessments levied against the property was not included in the word "taxes" as used in the will. In the case of In Re Miner's Estate, the Supreme Court of Michigan followed the case of Chamberlain v Gleason, and held that where the widow was given a devise of the homestead for life and was required to pay all taxes thereon, special assessments for a permanent improvement were not included in the word "taxes" as used in the will and not charged against the income.

In the case of Evans v Ockershausen, decided October 31, 1938, by the U. S. Court of Appeals of the District of Columbia; the court considered the question as to whether special assessments for street paving were payable out of income under the terms of a will which provided as follows: "to collect all income therefrom arising, and after the payment of all my funeral expenses, all my just debts and the costs of the administration of my estate, **including all taxes of any kind,** then to use said income of my real estate for the benefit, support and maintenance of my said wife, Ella M. during her life * * *." The court cited with approval Chambers v Chambers, supra; Chamberlain v Gleason, supra; R. I. Hospital Trust Co. v Babbitt, supra, and held: "While a special assessment is a charge against the property collected by a sovereign or a governmental agency, they are in a different category from the 'taxes' testator had in mind."

The courts have made a distinction between the word "taxes" as used generally, and "assessments". See **Lima v Cemetery Association, 42 Oh St 128; Jackson v Board of Education, 115 Oh St 368;** Anderson v Messenger, 158 Fed. (Ohio) 250; Champion Coated Paper Company v Commissioner, 10 Board of Tax Appeals, 433; Estey v Commerce Trust Company, 64 SW 2nd (Mo. 1933), 608.

The Court concludes that the two testators in the wills in question did not intend that the word "taxes" as used in said wills, should embrace or include assessments levied by the Miami Conservancy District. The word "taxes" as used in both wills was intended to include only current expenses such as ordinary taxes against the real estate, and was not intended to include special assessments such as Miami Conservancy assessments levied for a permanent improvement. Therefore, the trustee under the will of Louis S. Reibold is not authorized to deduct the entire amount of Miami Conservancy assessments from the income of the trust in order to arrive at the net income due the life tenant, Winifred Reibold.

The court must now determine the proper apportionment of said conservancy assessments between the life tenant and the remaindermen. The court finds that the conservancy dams, erected by the Miami Conservancy District which was established for the purpose of flood prevention, are in the nature of permanent improvements to the property benefited thereby, and that the assessments levied against the Reibold Building by the Miami Conservancy District for such purpose, were special assessments levied for the payment of the cost of permanent improvements. The court can

not conceive of any improvement to real estate which would be of more permanency than the improvement represented by the conservancy project.

The general rule is that taxes on real estate are payable by the life tenant. This rule has no application to special assessments levied against property for permanent improvements, in which case the court is required to make an equitable apportionment between the life tenant and the remaindermen. In the case of Chambers v Chambers, supra, the court on page 372 say:

"The complainant having paid these assessments to prevent the sale of the estate by the city treasurer therefor, and not being required by the will to pay them, we think that she is entitled to have them apportioned between herself and the respondent in the proportion which the value of her life estate bears to the value of the entire estate."

In the case of Chamberlain v Gleason, supra, it was held that equity may be invoked by the life tenant, and the court will apportion the assessment by imposing the principal upon the remaindermen and compelling the life tenant to pay only such interest thereon as becomes due and payable during her lifetime. In the case of In Re Miner's Estate, supra, the court followed and approved the case of Chamberlain v Gleason. The Supreme Court of Missouri determined this question in the case of Estey v Commerce Trust Company, supra, and held: "improvements and assessments for permanent improvement may be charged proportionately against the life tenant and remaindermen." The Court of Appeals for this district in 1935, in the case of Whipple v Ortlepp, supra, held: "An equitable action may be maintained by a life tenant to compel the remainderman to contribute to the payment of assessments levied against farm property for public improvements of a permanent nature, in proportion to the value of the benefit which accrues to his estate." In the case of Ward v Ward, 9 C. C. 454, (1895), the syllabus is as follows: "held, life tenant who had paid assessments for street improvements, upon partition of the premises, she will be entitled to equitable prorating of such assessments paid by her, according to the value of the improvement to the several interests."

In 1878 the court in Crawford v Crawford, 4 Ohio Dec. (Repr.) 138: held: "A life tenant of an estate having paid an assessment for the improvement of the property may recover from the remainderman an amount in proportion according to the relative value of the improvement to the respective estates." The rule to be followed in such case is stated at some length in Volume 21 Corpus Juris, 957, as follows:

"An assessment for a public improvement is not an ordinary tax, and the question whether it must be borne by the life tenant or by the remainderman, or apportioned between the two, depends to a large extent upon the circumstances of the particular case, and especially upon the probable duration of the improvement as compared with the expectancy of life of the life tenant. If the assessment is for something in the nature of a permanent improvement of the whole estate it may be ratably and equitably divided between the tenant for life and the remainderman, but where the improvement is of a temporary character, calculated to benefit only the life interest, the assessment must be paid entirely by the life tenant. Where a part of the improvement is permanent and a part will have to be replaced within a short time, the life tenant is properly charged with the cost of that part of the improvement which is temporary and the remainderman with the balance. According to some authorities assessments for improvements of a permanent nature ought to be apportioned between the life tenant and remainderman in the proportion which the value of the life estate bears to the value of the whole estate, while according to others, the principal of the expenditure for an assessment should be paid by the remainderman, and the life tenant should, during his term of enjoyment, pay the interest on such expenditure."

In support of this statement of law numerous cases are cited, a few of which will be noticed by the court. In the case of Sheffield v Cooke, 39 R. I. 217 (1916), wherein the court reviewed the cases of Chambers v Chambers, supra, and Hospital Trust Company v Babbitt, supra, and many other authorities, commenting at some length on the holdings of the several courts, the court on page 230 say: "It is, therefore, settled law in this state that the cost of permanent improvements should be apportioned between the life tenant and the remainderman in the proportion which the value of the life estate bears to the value of the entire estate."

In the case of Brown v Brown, 72 N. J. Eq. 667, the court on page 675 say: "With respect to the assessments for municipal

improvements there should be an equitable apportionment between the tenants for life and the remaindermen." The Supreme Court of the State of Indiana, in the case of Lantz v Caraway, 180 Ind. 484, 103 NE 335 (1913) held: "Permanent improvements, such as sewers and drains, add to the value of the entire estate, and the burden of making them must be equitably prorated between the remaindermen and the tenant for life. taking into account the probable duration of the estate and other relevant facts." In the case of Reyburn v Wallace; 93 Mo. 326, 3 SW 482, the court held:

"1. Tax bills issued for improving the surface of streets in the City of St. Louis, constituting liens on the property abutting on such streets, must be paid by the life tenant of such property; he is not entitled to contribution from the remainderman.

"2. The life tenant is only entitled to contribution from the remainderman in cases of assessments for improvements which are permanent in their nature and do not require renewal from time to time."

The Supreme Court of the State of Illinois in the case of Huston v Tribbetts, 171 Ill. 547, 49 NE 711, made a like distinction between improvements of a temporary and permanent character, and held: "The life tenant should bear the expenses of a special assessment for an improvement of temporary character, but where an improvement is permanent and increases the value of the remainder, a special assessment therefor should be borne by the life tenant and remainderman ratably, in proportion to the benefit accruing to each."

In the case of Nirdlinger's Estate, 327 Pa. State, 171, the court had before it the question of the rights of a life tenant as against those of the remaindermen, and held that as between life tenants and remaindermen the court, in ascertaining the intent of the testator, in most instances will favor the life tenant. The court held as follows: "Nearly all instances of long continuing trusts, the life tenants are the primary objects of the bounty of testators, and their incomes should be preserved to them, as far as it is possible to do so, even though it may result in ultimate diminishment of principal to be paid to far off remaindermen. Life tenants should not be required to starve in order that remaindermen may ultimately feast.' To which we may add, we think human experience shows the real purpose of most testators, in creat-

ing a family trust is to hold intact a principal from which the life tenants may receive an income, and to guard them against improvidence, rather than to pass something on to remote persons, oftentimes unborn when the will is made." In the case at bar, the court concludes that it was the purpose and intent of the testator to provide, first of all, for his widow, the life tenant, and that as between the rights of the life tenant and the remaindermen, with respect to the income from said trust, he intended his widow to be favored.

The court finds that in some jurisdictions the courts charged the principal of the expenditure for an assessment for permanent improvements against the remainderman, and the interest on such expenditures against the life tenant during his term of enjoyment. However, in other jurisdictions the courts have apportioned assessments for permanent improvements between the life tenant and the remainderman in the proportion which the value of the life estate bears to the value of the whole estate. The court believes the latter rule is to be more equitable and just, and more generally followed by the courts of the several states.

The conservancy assessment payments consist of principal, interest and maintenance expense. Maintenance expense is in the nature of current expense, and should be charged against the income of the life tenant. That portion of the conservancy assessments which consists of principal and interest represents the cost of permanent improvements, and should be apportioned between the life tenant, Winifred Reibold, and the remaindermen, in the proportion which the value of the life estate bears to the value of the whole estate, beginning with conservancy assessment payments immediately after the date of the death of Louis S. Reibold. There is nothing in the will of Louis S. Reibold to indicate that the testator intended the trust to operate differently after the termination of the trust under the will of Louis Reibold in September, 1933, and therefore the same apportionment of assessment payments will be made for the entire period from the date of death of Louis S. Reibold to the termination of the life tenancy of Winifred Reibold. The value of the life estate of Winifred Reibold shall be computed on the basis of American Experience Table of Mortality. §10512-1 GC. Whipple v Ortlepp, supra. The life expectancy

should be determined on the basis of the age of the life tenant as of the date of death of Louis S. Reibold, and the interest of the life tenant and remaindermen should be evaluated as of the same date.

The fact that there may not be sufficient liquid assets as part of the corpus of this estate to reimburse the life ▓▓▓▓▓▓▓ tenant for that part of the conservancy assessments deducted from her income which should have been charged to the remaindermen, does not in any way change the principle of law which subjects the corpus of the estate to the payment of a part of such assessments. Unless the trustee encumbers the corpus of the trust to reimburse the life tenant, the interest of the life tenant will be protected through the right of subrogation by declaring a lien on the corpus of the trust until the claim is paid. 21 Corpus Juris, 958; **Eddy v Leath, Admr., 6 C.C. (N.S.) 249 (1904)**, affirmed without opinion by the Supreme Court of Ohio in **74 Oh St 462.**

The court must now determine the proper apportionment between the life tenant and the remaindermen, of $7000.00 which represents one-fourth of the total amount of compensation allowed the attorneys in the partition suit. One-fourth of the compensation allowed the attorneys in the partition suit has been charged against the trust, for the reason that the trust estate constitutes one-fourth interest in the Reibold Building. The court is of the opinion that, even though a judgment in partition was not entered by reason of a settlement being effected between the ▓▓▓▓▓▓▓ parties, the Common Pleas Court, nevertheless, had the power, under the provisions of §12050 GC, to apportion the compensation among the attorneys representing the various interests. **Fibbe v Poland, 24 Oh Ap 532, 534; Edwards v Whims, 2 N.P. (N.S.) 464, 467.**

The total amount of compensation allowed the attorneys including the $7000.00 item, was paid by the receiver out of the income from the Reibold Building. However, the Common Pleas Court, in the partition suit, by court entry reserved the right of the trustee "to make an application to any court of competent jurisdiction to allocate and adjust" the fees between the life tenant and the remaindermen. It has been held that expenses of litigation incurred in protecting and conserving the corpus, or in the administration of the trust, are chargeable against the principal of the trust rather than the income. Cogswell v Weston, 228 Mass. 219, 222; Gulick v Gulick, 42 N. J. Eq.323; Abend v Endowment Fund Com., 174 Ill. 96; Estate of Gartenlaub, 185 Calif. 648, 655. A statement of the principle of law applicable to the apportionment of expenses incurred by litigation, is stated in Restatement of the Law on Trusts, Vol. 1, page 685, as follows:

"Expenses other than ordinary current expenses are ordinarily payable out of principal. Thus, the trustees commissions in respect of principal, the cost of effecting sales, exchanges or acquisitions of any part of the principal, are payable out of the principal. * * *

"Expenses incurred by the trustee in maintaining or defending an action to protect the principal of the trust property or to assure the title thereof are payable out of principal, since to the extent that the protection of the principal may have been a benefit to the beneficiary entitled to the income, payment of the expenses from principal automatically throws part of the burden upon the interest of the beneficiary entitled to income. Expenses in maintaining or defending an action to protect only the income are payable out of income. Expenses in maintaining or defending an action to protect the principal of the trust property and income which has accrued at the time of the suit are allocable between principal and income."

In determining on what basis the $7000.00 payment should be apportioned between the life tenant and the remaindermen under the trust, the court can not fail to observe that the life tenant, Winifred Reibold, was represented by counsel and that said counsel was allowed a fee of $1500.00. The life tenant in the instant case filed an answer in which she prays for an order of this court apportioning this $7000.00 item on the basis of all parties paying their respective counsels. Since the life tenant decided to be represented by counsel to ▓▓▓▓▓▓▓ protect her interest in the partition suit, the court is of the opinion that the general rule herein stated should be so applied that the fees which have been properly allowed to counsel for the life tenant, should be charged against the income rather than the corpus of the trust. The court is of the opinion that in fairness and in equity the life tenant should bear $1500.00 of the $7000.00 item charged to the trust, and the corpus should bear the remaining portion, to-wit $5500.00.