**THIRD NATIONAL BANK & TRUST CO., Plaintiff, v REIBOLD, et., Defendants.**

Probate Court, Montgomery County.

No. 102524.   Decided 1948.

514

**516**

Smith, Schnacke & Compton, Dayton, for The Third National Bank & Trust Company as Ancillary Administrator w. w. a. of the Estate of Winifred Reibold, Deceased, plaintiff.

Munger & Kennedy, Dayton, for The Winters National Bank & Trust Company as Administrator d. b. n. w. w. a. of the Estate of Louis S. Reibold, Deceased, and as Trustee, defendant.

Dolle, O'Donnell & Cash, Cincinnati, for J. Corlis Evans, defendant.

Joseph D. Chamberlain, Dayton, for Frank B. Reibold, Edwin T. Reibold, Susanna Reibold, Louise Reibold Chapin, and Margery Virginia Reibold Sommer, defendants.

## OPINION

By LOVE, J:

At the instance of The Third National Bank and Trust Company of Dayton, Ohio, ancillary administrator with will annexed of the estate of Winifred Reibold, deceased, plaintiff herein, the Court is required to declare and determine certain rights and duties arising out of the trust created by Louis S. Reibold, deceased, under Item Fifth of his last will and testament as they pertain to Winifred Reibold, equitable life beneficiary under said will and the person entitled to the net income of the trust estate for life, and those persons successively entitled to the corpus of the trust at her death.

The Winters National Bank and Trust Company of Dayton, Ohio, a defendant herein, as trustee under Item Fifth of the will of Louis S. Reibold, deceased, and as administrator de bonis non with will annexed of the estate of Louis S. Reibold, deceased, and J. Corlis Evans (a defendant herein) also seek the Court's declaration and determination of certain questions hereinafter set forth pertaining to the estate and trust.

Louis S. Reibold died testate on the 11th day of June, 1924. It is necessary to set forth in full Item Fifth of his will in order to understand the questions presented by the parties. He provided as follows:

"ITEM FIFTH: I do give and devise to my Executor hereinafter named, all my title and interest under the will of my uncle, Louis Reibold, and otherwise in and to the following described real estate, * * * and known as the 'Reibold Building,' subject to such mortgages as shall be thereon at the time of my death, my proportion of the indebtedness secured thereby or so much of such indebtedness as shall be a charge against my estate to be paid out of my said title and interest in and to said real estate in this Item described, such my title and interest in and to said real estate so devised in this Item to be held in trust, nevertheless, for the following purposes: Said Executor shall have entire management and control of said property so devised to it under this Item, subject, of course, to the provisions of the will of my said uncle, with full power to lease same, to rent same, to collect the rents and pay the taxes, repairs and fire insurance, and keep the same in first class repair, to borrow money on the strength of my estate and the credit of same, to execute notes and mortgages, binding my estate and conveying the real estate as described in this Item, or any part thereof, as security for the same, whenever in its judgmment it may be necessary or for the benefit of this trust so to do for the purpose of raising and procuring money to rebuild, remodel or repair any buildings on said real estate described in this Item, or to pay any incumbrances on the real estate described in this Item, which may be a lien thereon at the time of my death, to sell all or any part of my interest in the real estate described in this Item at public or private sale, at such times, upon such terms and for such prices, as to my said Executor may seem best, whether for the purpose of paying the above mentioned mortgages on said real estate or otherwise, to make such investments of the proceeds of sales hereunder, including investments in real estate, as to my said Executor may seem best, and to execute such deeds, leases and other instruments in writing as to my said Executor may seem best. I direct that my said Executor shall pay the net income from said trust property under this Item to my wife, Winifred Reibold, in quarterly installments during her natural life, or while she remains my widow. Upon the death of my said wife or upon her remarriage, I direct that my said Executor shall convey, transfer and assign all of said trust property

under this Item as follows: one-fifth thereof shall be conveyed, transferred and assigned to my cousin, Benjamin F. S. Reibold, then surviving, for and during his natural life, and one-fifth thereof shall be conveyed, transferred and assigned to my friend, J. Corlis Evans, then surviving, for and during his natural life, and, subject to such life estates, said trust property under this Item shall be conveyed, transferred and assigned to such of my cousins, Frank B. Reibold, Fred E. Reibold and Edwin T. Reibold, as shall then survive, in equal proportions, share and share alike, the children of such of them, as shall be then deceased, to take the share their parent so dying would have received, if living; and I direct that no rights of the beneficiaries of the trust created in this Item, other than my said wife, shall vest prior to the death or remarriage of my said wife."

It is to be noted that Winifred Reibold, widow of Louis S. Reibold, was to receive the net income from the trust property during her natural life or until her remarriage.

Winifred Reibold died on the 11th day of August, 1944, never having remarried. Fred E. Reibold and Benjamin F. S. Reibold predeceased Winifred Reibold. The defendants Margery Virginia Reibold Sommer and Susanna Louise Reibold Chapin are the children of Fred E. Reibold, deceased. The defendants J. Corlis Evans, Frank B. Reibold, and Edwin T. Reibold survived Winifred Reibold.

The interest of Louis S. Reibold in the Reibold Building was an undivided one-fourth (¼) interest which he had received by devise from his uncle, Louis N. Reibold, subject to a trust for twenty-five (25) years which terminated September 19, 1933 so that the Louis S. Reibold estate became entitled to right of full possession and enjoyment of said one-fourth (¼) interest.

Under date of December 24, 1936 the trustee as the owner of said one-fourth (¼) interest in said Reibold Building and the land on which the same is located, the contingent remaindermen under Item Fifth of the will of Louis S. Reibold, and the owners of the other three-fourths (¾) interest in said real estate, as lessors, executed a written lease to the Elder & Johnston Company of Dayton, Ohio, as lessee, for a term of twenty-five (25) years commencing January 1, 1937 and ending December 31, 1961. Winifred Reibold was not a signatory to said lease. The lease among other things provides that the lessee pay certain cash rents to the lessors, install elevators, negotiate a new mortgage, and pay off an existing mortgage, all of which has given rise to the questions propounded in this case.

As each question is considered, the applicable portions of the lease and all facts necessary for an understanding of the question will be set forth.

The Court will first dispose of the questions presented by The Third National Bank and Trust Company of Dayton, Ohio as ancillary administrator with will annexed of the estate of Winifred Reibold, deceased.

The first question pertains to what apportionment, if any, of rent for the month of August, 1944 and the rent based on lessee's sales in excess of five million dollars ($5,000,000.00) for the year 1944 should be made as between the estate of the equitable life beneficiary, Winifred Reibold, who died on August 11, 1944, and the persons successively entitled to the corpus of the trust upon the death of the equitable life beneficiary including J. Corlis Evans, legal life tenant in one-fifth (1/5) of the corpus of the trust.

The rental provisions of the lease with' The Elder & Johnston Company executed by the trustee under the authority of the will for the benefit of Winifred Reibold provide as follows:

"II.

The Lessee covenants to pay to the Lessors during the said term, the following amounts in lawful currency of the United States, viz:

(a) **During each and every year of the first ten (10) years of the term, the minimum sum of Eighty Four Thousand Dollars ($84,000.00);**

(b) During each and every year of the next five (5) years of the term, the minimum sum of Ninety Thousand Dollars ($90,000.00);

(c) During each and very year of the next five (5) years of the term, the minimum sum of Ninety-five Thousand Dollars ($95,000.00);

(d) During each and every year of the next five (5) years of the term, the minimum sum of One Hundred Thousand ($100,000.00);

(e) **For each and every year of the entire twenty-five (25) years of said term, an additional amount equal to two percent (2%) of the aggregate gross sales of merchandise, in excess of Five Million Dollars ($5,000,000.00) in amount, made** during such year by the Lessee, its successors or assigns, and by its subagents and any and all persons, firms and corporations who are, or may be, carrying on a business or businesses on, in, or from the department store to be conducted on said demised premises by the Lessee, its successors and assigns.

III.

Each of the foregoing minimum sums, agreed to be paid by the Lessee, under sub-paragraphs (a), (b), (c) and (d) of the foregoing paragraph II hereof, during the respective years of said term, shall be paid in equal monthly installments, in advance, on or before the 15th of each and every calendar month of the respective years.

The additional sums agreed to be paid by the Lessee under sub-paragraph (e) of the foregoing paragraph II hereof, based on annual gross sales in excess of Five Million Dollars ($5,000,000.00), shall be paid on or before April 1st of the year following the year to which the payment applies; such payments commencing on April 1, 1938, and ending on April 1, 1962. Each such payment shall be due and payable as additional rent at that time." (Emphasis ours.)

In Item Eighth of his will Louis S. Reibold provided:

"ITEM EIGHTH: The provisions made in this my will for my said wife, Winifred Reibold, are in lieu of her dower, year's support and all other statutory allowances."

The Court finds that the lessee has paid all of the rentals as provided for in said lease and that the trustee has collected all rentals for the month of August, 1944 in the amount of seven thousand dollars ($7,000.00) and has also collected the additional rent for the year 1944 in the amount of one hundred and five thousand eight hundred and twenty-five dollars and sixty cents ($105,825.60) consisting of two percent (2%) of the aggregate gross sales of lessee in excess of five million dollars ($5,000,000.00) during the year 1944.

The general rule on the subject of apportionment of rents as between persons successively entitled thereto is stated in 126 A. L. R. 42.

"The general rule followed in the absence of contrary statute and in the absence of an intention in favor of apportionment appearing from the will or other instrument under consideration is that income consisting of rent money is not apportionable as between persons successively entitled, where the right of one person ends and that of another begins during a rent period." (Emphasis ours.)

Many cases are discussed among which is **Snyder v Heffner** (1929) **33 Oh Ap 379**, 169 N. E. 460. The holding in the Snyder case was to the effect that an intention against apportionment appeared in the instrument under consideration.

Apportionment of rents was allowed by the court in the case of **Barbour v Gallagher, 2 Oh Ap 205,** to "carry out the intention of the testator as expressed in the will." The court did not deem it necessary to discuss or consider rules of apportionment between life tenant and remainderman; however, the court say on pages 209 and 210:

"Taking, however, the rules of apportionment as they existed under the common law and as modified later by the statutes and decisions, if they were applied to the determination of the question of division of the property in the hands of the trustees, we are of the opinion that it would result in the same division that we have found necessary to carry out the intention of the testator as expressed in the will."

The Gallagher case is cited in 126 A. L. R. 44.

In **16 O. Jur., Sec. 53, pages 437 and 438,** it is stated that at common law rents were not apportionable and that the common law rule prohibiting apportionment, while changed by statute in many jurisdictions, prevails in Ohio.

The plaintiff in its brief has worked out an excellent theory that the law of Ohio permits apportionment in the absence of any intent to apportion which may be expressed in a will and cites and argues the following cases: **Noble v Tyler, 61 Oh St 432;** Barbour v Gallagher, supra; In Re; Sturgis, 8 O. N. P. (N S) 486; Capelle v Wieman, 9 O. C. C. (N S) 412. But the Court is not required to decide the question of apportionment where the will does not express an intention to apportion as this case turns upon and will be decided upon the intention of Louis S. Reibold as expressed in his will and upon equitable principles.

The plaintiff properly contends that this Court has conclusively in previous litigation between the same parties adjudicated Louis S. Reibold's intent as expressed in his will and refers the Court to a reported opinion of this Court in the case of **Reibold v Evans, 28 Abs 266.** It is perhaps unnecessary to say that this Court adopts the conclusions and the holding in Reibold v Evans and considers that it is bound by the Court's final order which was reviewed and affirmed by the Court of Appeals of Montgomery County in **Reibold v Evans, 18 O. O. 331, 65 Oh Ap 123.**

In the judgment entry of this Court it is stated:

"That it was the purpose and intent of the testator, Louis S. Reibold, as expressed in his said last will and testament, to make his wife, Winifred Reibold, the primary object of his

bounty so long as she lives and remains his widow, and that as between her rights and those of remaindermen with respect to the income from the trust created under ITEM FIFTH of said last will and testament, said testator intended his said widow to be favored to the end that she should receive the entire net income of said trust property to the fullest extent permissible under the terms of said will; * * *

"That the said will of Louis S. Reibold, deceased, be, and it hereby is, construed in accordance with the foregoing findings and orders of this decree, and that the Defendant, The Winters National Bank and Trust Company, of Dayton, Ohio, as Administrator de bonis non with will annexed and trustee under the said will of Louis S. Reibold, deceased, shall proceed in the administration of the trust under ITEM FIFTH of said will in accordance with the foregoing findings and orders of this decree."

Accordingly it is the opinion of this Court that the judicially determined intent of Louis S. Reibold as expressed in his will in favor of his widow carries with it an intent to apportion rents. With respect to the income, apportionment of rents is the only method by which Winifred Reibold can be favored so that she will "receive the entire net income of said trust property to the fullest extent permissible under the terms of said will."

In addition to the foregoing this decision to apportion rents is based on those cases which favor apportionment where rights in income for support and maintenance are involved. See Morgan v Morgan, 3 A. 63, 41 N. J. Eq. 235, at page 238:

"I think the rent should be apportioned. At law this cannot be done; but it is most equitable that it should be, especially where it is plain that the gift is intended for support, although it may not be so expressed in words:"

Also see Frazer v First National Bank, 235 Ala. 252; 126 A. L. R. pages 49 and 50.

Aside from what has been said about the judicially determined intent of Louis S. Reibold to favor his widow and the application of that line of authority which favors apportionment of rent in those cases where the testator in his will intended to provide support for the lives of certain favored persons, on equitable principles alone this Court favors apportionment on a day by day basis. Items Fifth and Eighth of the will, the powers and authority granted to the trustee in the will, and the terms of the lease entered into by the

trustee and remainderman support in justice and equity such a holding. The trustee in Louis S. Reibold's will was given the entire management and control of the trust property, the power and authority to rent and collect rents, and full and complete power to enter into leases. The net income was to be paid to Winifred Reibold. It is obvious from the will that the testator had one main purpose in mind: to create income for the benefit of his life beneficiary, his widow. The lease provided (1) an annual money rent (payable monthly in advance) and (2) an annual percentage rent. The latter could not be determined until the end of the year; and, for the convenience of the lessee, payment was provided in April after the close of the preceding year. On equitable principles, therefore, the widow is entitled to all the net income earned up to the date of her death irrespective of the manner of computing the rents and dates of payment. Any other holding would unjustly enrich the remaindermen at the expense of the widow and her estate.

The second question is whether the estate of Winifred Reibold, the equitable life beneficiary, is entitled to reimbursement and contribution from the corpus for the cost of the installation of elevators.

The applicable portions of the lease which may have some bearing on the question to be decided are hereinafter set forth:

"VI.

\* \* \*

Lessee agrees \* \* \* that it will **install new elevators on the Main Street side of said buildings** of a size, efficiency, and capacity **to adequately serve the offices in said buildings,** with the express understanding that the elevator shaft enclosures shall conform to present corridor construction and finish. **The estimated cost of the new elevators is understood to be not less than $100,000.00. The Lessee agrees that it will, on the signing of this lease, deposit in escrow with The Winters National Bank & Trust Co. of Dayton, Ohio, the sum of $100,000.00 in cash or bonds of the United States,** such escrow deposit to be available for construction of said new elevators and to be paid from time to time upon architect's estimates, as the installation of such new elevators progresses. **Such elevator installation shall be promptly begun and efficiently completed, and shall be received by the Lessors in lieu of a guarantee of rent. The Lessee shall pay the full cost of elevator installation, and protect the Lessors and the property from any lien thereon or therefrom.** It is recognized that the

**524**

payment of the cost of this elevator installation by the Lessee will raise a question in the administration of the trusts which are being administered by the testamentary trustees who are parties to this lease, as to what portion of the cost thereof is to be treated as an improvement of the corpus of the estate out of moneys which would otherwise have been paid in the form of income as additional rent had such improvement not been made; and, therefore, it is understood that nothing in this lease shall prejudice the right of any such trustee, or of any beneficiary of any such trust, to apply to any Court of competent jurisdiction to have such question determined and to have an adjustment made therefor as between life tenants and remaindermen.· The interest return upon such deposited cash or bonds shall belong to the Lessee, and be payable to it, as the same accrues. Lessee agrees that the elevator contract shall be let within three months of the delivery of this lease, and the construction begun within six months after such delivery. Otherwise, said escrow deposit shall be or become the property of the Lessors and be delivered by the escrow agent to the Lessors as liquidated damages·for such default of Lessee." (Emphasis ours.)

"VII.

. . . . . Any and all additions, betterments, and improvements, whether structural or mechanical, placed in or added to the building and its equipment, or used or useful for the operation of the property, shall become and be the property of the Lessors, and Lessee shall have no right to remove the same or make any claim for the value of such improve-. ments, betterments, or additions upon the termination of this lease, whether by expiration of time or on default of Lessee."

In Article VIII the lessee agreed, at its own expense, to keep and maintain said buildings "in good condition and state of proper repair, during the entire term of this lease, including renewing and replacing from time to time all of the building equipment, **elevators,** electrical wiring, heating appliances, plumbing, and machinery, used or useful for the purposes of the building; said building to be returned to Lessors in good condition and state of proper repair upon the termination of this lease, subject only to ordinary wear and tear." (Emphasis ours.)

"XIV.

The elevator and machinery in connection therewith, in said buildings, shall be operated by said Lessee at such times

and hours and in such ways as they deem proper, at Lessee's expense, and the Lessors shall not in any way be responsible for any damage arising from the operation, management, or condition of such elevators.

### XVII.

Lessee shall use said premises solely for the purpose of conducting a department store on not less than five (5) floors of the building thereon, and for office purposes in the remainder of said building.

### XII.

\* \* \*

Provided, however, that the said Lessee shall have the right to sublet said premises, or any part thereof, as may be necessary in the operation of its department store business, or in the renting of office space in the building;

\* \* \*

### XXVII.

Lessors, \* \* \* covenant and agree \* \* \* with the Lessee, \* \* \* that the said Lessee, \* \* \* shall take over, receive, collect and enjoy, beginning January 1st, 1937, all monies and rentals of all occupants to offices and space on said premises, and also the rental accounts hereinabove provided for."

The Court finds that the elevators were installed, as agreed by the lessee, during the years 1937 and 1938; that the life of the elevators installed by the lessee is twenty-five years; that the lessee is depreciating the cost of the installation of the elevators over the period of the lease; that the old elevators which the new ones replaced were, while operating, of an old hydraulic type and obsolete and that the installation of new elevators was necessary for the production of income; that the cost of the installation of the elevators was one hundred and one thousand three hundred and three dollars and twenty-one cents ($101,303.21) and that approximately seventy thousand dollars ($70,000.00) of this amount was paid for the new elevator equipment and the remainder for certain changes in the elevator enclosures, a penthouse on the roof to house machinery, and certain other changes of a structural nature to the elevator shafts, all of which were necessary to accomodate the new elevators; that the installation of new improved elevators in a building such as the Reibold Building always carries with it certain structural changes to the building as an incident to the installation; that the lessee paid for the installation of the elevators in compliance with the terms of the lease; that lessee failed to deposit in escrow with The Winters National Bank and Trust Company of Dayton, Ohio the sum of one hundred thousand

dollars ($100,000.00) in cash or bonds at the time of the execution of the lease as provided therein; that the installation of the elevators was received by the lessors in lieu of a guarantee of the cash rentals provided for in the lease for the period of the lease; that the installation of elevators constitutes a temporary improvement or a semi-permanent improvement as distinguished from a repair; that the language in the lease, recognizing that a question will be raised in the administration of the trust as to what portion of the cost was to be treated as an improvement of the corpus out of moneys which would otherwise have been paid in the form of income as additional rent had such improvement not been made, has no legal effect other than reserving the right to a proper party to at some future time litigate the question; and that no evidence was presented as to any additional rent the lessee would have paid to the lessors had the elevators not been installed other than what may be inferred from the lease itself; and such other findings which may appear below in deciding the point at issue.

The plaintiff contends that the equitable life beneficiary is entitled to contribution from the corpus of the trust and to a lien against the corpus and that a portion of the elevator installation cost has resulted in benefits to and increase in value of the corpus of the trust estate. Plaintiff's contention is based on the theory that lessee would have paid as additional rent the sum of twenty-five thousand, three hundred twenty-five dollars and eighty cents ($25,325.80) (being one-fourth of the cost of the installation of the elevators) prior to the death of the life beneficiary which the life beneficiary would have received as additional income had the elevators not been installed. It is contended that the cost of the installation of the elevators is chargeable to corpus in order to effectuate the manifest and judicially determined and declared intent of the testator or, assuming that there was no such intent, that the expenses should be borne by the corpus on the ground that the cost of improvements, as distinguished from repairs made upon real property held in trust, must be borne by the corpus of the trust.

The remaindermen contend (1) that the equitable life beneficiary benefited by the improvements made by the lessee by reason of the fact that the lease was entered into upon the condition that elevators be installed; (2) that she was entitled only to net income which would, according to the intent of the testator, require that the payment for all expenses for repairs, remodeling, and building improvements be first deducted and therefore no apportionment of such

expenditure as additional rent or income can be made. J. Corlis Evans contends (1) that the cost of installing the elevators is in no sense additional rent to the lessors and hence no question of apportionment is presented as the installation of the elevators was for the exclusive benefit of the lessee; (2) assuming that the cost of installing the elevators was additional rent, then had such elevators not been installed, the income paid as additional rent would amount to four thousand fifty-two dollars and thirteen cents ($4,052.13) a year over the life of the lease which sum of money would be used by the lessors to install elevators which, if amortized by the trustee on the theory that the life beneficiary would receive some benefits, would cancel out the income otherwise received.

The question presented has not been passed on by the courts of this state. The case of Reibold v Evans, supra, as it might pertain to the installation of elevators and the apportionment of the cost thereof is not a controlling precedent because the Court was construing the will of Louis S. Reibold for the purpose of determining the right to apportion the payments of conservancy assessments which represented the installation of a permanent improvement required to be made by law, while in the case at bar the Court is required to determine a question of apportionment of the cost of the installation of an improvement less permanent in nature installed by the agreement of the parties.

The Court is of the opinion that the matter of intention cannot decide this question as neither the will of Louis S. Reibold nor the judicially determined intent as found to exist in the will with respect to Winifred Reibold is of assistance in working out the complications raised by the plaintiff's contention.

After an examination of the authorities in other states, including those cited by counsel in their briefs, it seems well settled that the costs of taxes and other necessary expenses incurred in the administration of real estate held in trust are chargeable to and should be paid out of income. It seems equally well settled that permanent improvements which result in a direct increase of the principal fund or in a substitution, which vary the items of which it is composed, are generally payable from capital or corpus. An examination of the authorities does not disclose any precise formula that can be applied when the expense involved is for temporary improvements which are sometimes termed semi-permanent improvements, extraordinary repairs, or wasting assets. A number of cases hold such expense apportionable between

income and corpus; others hold it chargeable to corpus; and still others take the view that such expense should be charged to corpus amortized. (See 26 R. C. L. 1382 et seq; 33 Am. Jur. 988 et seq; Anno. Cases 1918 E, page 947, et seq; Scott on Trusts, Vol. 2, Sec 233.3, pages 1265 and 1266; Bogert Trusts and Trustees, Vol. 4, Page 2327.) In the case of Stevens v Melcher, 152 N. Y. 551; 46 N. E. 965 at page 970 the court summarized the law as follows:

"There are many cases in the books in which relief of this character has been refused; many others in which it has been granted. Each case is largely dependent upon the circumstances and special equities surrounding it, which may bring it within or distinguish it from general rules."

and in the case of Guthrie v Wheeler, 51 Conn. 207 at page 213 it is said:

"It is true it was expended not for ordinary repairs but for repairs in the nature of permanent improvements. But it is difficult to make any legal distinction between ordinary and extraordinary repairs. If they are necessary in order to preserve the property and make it productive, they should be paid for from the income."

While no case directly in point has been found, the question of the allocation of the expense of an elevator installation or replacement has been passed upon or discussed by courts of other states.

In the first case, Little v Little, 161 Mass. 188, the court held that the replacement of an old elevator was properly chargeable to income. In approving what was apparently an "Auditor's Report" the following language was used at page 195:

"In the Evans House (first account) a new elevator was needed to replace an old one, and was put in in September, 1889, at a cost of $1,240. In the second account there is charged for a new boiler needed to replace an old one, $1,577.61. These charges are properly made to income."

In the second case, Matter of Adler, 299 N. Y. S. 542, 164 Misc. 544 at page 557 (N. Y.), the court, as nearly as can be determined, decided that the replacement of elevators was a "temporary improvement" and that the cost thereof should be amortized.

In the third case which is reported in Abell v Brady, 79 Maryland 94, where elevator expense was not at issue, the dicta of the syllabus was as follows:

"Devisees of the income of a trust estate are properly chargeable only with ordinary expenses and repairs, and not with improvements in the nature of betterments—such as constructing * *. *elevators * * *."

Assuming, as the plaintiff does, that the cost of the elevator replacement was additional rent, the Court is unable to agree that the plaintiff would be entitled to twenty-five thousand three hundred twenty-five dollars and eighty cents ($25,325.80) or one-fourth (¼) the cost of installing the elevators since this sum would be the additional rent for the use and occupancy of the premises for the twenty-five year term of the lease. Accurately stated, the additional rent would be four thousand fifty-two dollars and thirteen cents ($4052.13) per year of which the plaintiff would have been entitled to one-fourth (¼) thereof or one thousand and thirteen dollars and four cents ($1013.04) per year until the date of Winifred Reibold's death. Assuming also that the lessee had agreed to a cash payment of one hundred and one thousand three hundred and three dollars and twenty-one cents ($101,-303.21) as additional rent for the twenty-five year period, the lessors (including the trustee herein) would then have paid the expense for the installation of the elevators as consideration for such additional rent. If this had been the case, the Court would have found little difficulty in applying the rule laid down in Restatement of Trust, Sec. 233, Para. L., page 688, which substantially provides that the cost of the improvement is chargeable to corpus but that the trustee should amortize a portion of the cost from income during the life of the equitable life beneficiary. In the case of Matter of Adler, supra, the court at page 577 makes the following statement:

"For such temporary improvements the amortization should not commence until the expenditure is actually made. The life tenants here are entitled to the benefit of the remaining life of the elevators presently in service. If and when new elevators are installed the life tenants through permissible amortization will be paying each year for the benefit received. If they should die before the usable life of the new elevators has expired the remaindermen will receive the benefit of the balance of their usable life and should pay therefor."

This rule would have been applied as follows. As pointed out before, the lessee would have been paying to the trustee for the life beneficiary one thousand thirteen dollars and four cents ($1013.04) per year as additional rent. The trustee would have have been authorized to amortize the elevator cost over the life of the elevators, twenty-five years. The amount charged against the life beneficiary's income by reason of the permissible amortization would be one-fourth (¼) of four thousand fifty-two dollars and thirteen cents ($4052.13) or one thousand thirteen dollars and four cents ($1013.04) per year also. Since the length of the lease and the life of the elevators both happen to be the same period of time, twenty-five years, the additional income would be cancelled out by the permissible amortization of the cost of the elevator installation. This rule, since it is simple of application, always a consideration from the standpoint of trustees in administering estates, and, since it reaches a just and equitable result, has much to commend it.

Nor is this Court in agreement with the contention of the defendant remaindermen that it was the testator's intention that improvements such as the installation of these elevators would be deductible from gross income in arriving at the net income due the equitable life beneficiary. The intention of the testator in favoring his widow as determined in the case of Reibold v. Evans, supra, has already been accepted by this Court as set forth in the discussion and holding on the first question. It would therefore be inequitable and contrary to the intention of the testator to charge the entire expense of this improvement to the life beneficiary. Furthermore, the Court has found from the evidence that this installation replacement was not an ordinary repair which is further evidenced by the fact that the parties to the lease, who had already provided for general maintenance, deemed it necessary to make a special provision for elevators. (See Articles VI and VIII of the lease, supra.)

The difficulty in the application of the rules of allocation, apportionment, or amortization of the expense herein involved is that neither the trustee nor the remaindermen nor the life beneficiary bore any portion of this expense. The replacement was made and paid for by the lessee and was almost entirely for its benefit. It appears to the Court that this fundamental matter has been overlooked in plaintiff's theory of the case.

What then were the rights of the equitable life beneficiary under the will of Louis S. Reibold and the lease entered into with The Elder & Johnston Company? The testator and

settlor in Item Fifth of the will, after providing for many contingencies, gave to his wife the net income from the property to be held in trust. She had the right to receive this income and the right to compel the trustee to pay it to her. She should be allowed to recover from the corpus and any such income due her which has been diverted to and enriches the remaindermen. In Bogert Trust and Trustees, supra, at page 2327, Vol. 4, this pertinent statement is made:

"The life cestui ought not to be required to permit income due him to be used to enrich the remainderman, although the life beneficiary must do his part in maintaining the value of the remainderman's interest."

Therefore, the Court is of the opinion that the plaintiff must show as a prerequisite to recovery that Winifred Reibold has been prejudiced by diminution of the net income to which she is entitled and that the remaindermen have been enriched thereby. An examination of the entire lease (which is too long to be set forth in full) discloses quite forcibly that the trustee, in cooperation with other parties in interest, entered into a lease which was of great benefit to the lessors and consequently of great benefit to Winifred Reibold. In fact there remained nothing for the lessors to do after this lease went into effect on January 1, 1937. All burdens, responsibilities, and duties were shifted to the lessee. One cannot read this lease without arriving at a very definite conclusion: the installation of the elevators must have been of vital importance in arriving at the total rents to be paid by the lessee. The evidence discloses that the new elevators which replaced the old elevators were installed in the Main Street side of the Reibold Building. The evidence further discloses that these elevators were to be used by the tenants of the building and in part by the lessee who operates a department store in said building. The Court will take judicial knowledge of the fact that an elevator is a conveyance lifting persons from a lower floor to a higher floor and vice versa and is necessary in the operation of an office building and affects materially the amount of income received from tenants in said building. Articles XII and XXVII of the lease hereinbefore quoted gave the lessee complete right to sublease to tenants in the building and to receive the income derived therefrom. In the absence of testimony as to any additional rent the lessee would have paid to the lessors had the elevators not been installed, it would appear from the lease that the installation of elevators was an important

factor to assist the lessee in producing income for the purpose of making the cash rents to be paid by the lessee provided in Article II of the lease and that the lessee would not have received as much rent from the tenants of the building had the elevators not been installed. This is a reasonable construction of the lease in examining it in its entirety as it does not seem logical that The Elder & Johnson Company would have paid more rent for the privilege of operating obsolete elevators as a part of the use of the building.

Furthermore, Article VI of said lease specifically provides that "such elevator installation * * * shall be received by the Lessors in lieu of a guarantee of rent." In other words, the elevator installation became nothing more than a guarantee for the cash rents which the lessee agreed to pay for the term of the lease. The cash rents have been paid to the trustee and constitute the principal income to the trust from which Winifred Reibold's net income is derived.

It would appear, therefore, that the plaintiff has not proved that the lessee would have paid additional rent nor that Winifred Reibold would have received additional income had the elevators not been replaced nor that the remaindermen will receive any enrichment at Winifred Reibold's expense as a result of the replacement.

J. Corlis Evans, legal life tenant of one-fifth (1/5) of the corpus, makes the very pertinent argument that the only party benefiting from the construction of the new elevators was the lessee who paid for them and is charging off the cost of the same during the term of the lease. While it is undoubtedly true that the elevators constituted an improvement to the building itself, it is the opinion of this Court that fundamentally the only benefit actually derived by way of income as a result of the installation was the money actually paid by way of cash rents, the benefits of which the life beneficiary has received during her lifetime and which the remaindermen will receive henceforth. When the remaindermen come into possession of the premises at the end of the lease, they will be in possession of a building in which elevators again approach obsolescence, the usable life of them having been substantially exhausted by the lessee.

In the case of Stevens v Melcher, supra, the court had before it a similar situation but one in which the life beneficiary had herself constructed a new building on the trust premises for one hundred thirty thousand dollars ($130,000.00) and the tenant under a ten-year lease had remodeled an apartment into a hotel at a cost of seventy-five thousand dollars ($75,000.00). The court held that the remainderman had been benefited from the first item to the extent of ninety

.thousand dollars ($90,000.00) and that amount should be charged against the principal. It further held that the remodeling cost of seventy-five thousand dollars ($75,000.00) was not chargeable against the principal and said that "The changes made in the building were not paid for by her" (the life beneficiary) "and we do not think it can properly be said that the cost therefor came out of the rent. The tenant made the changes for his own benefit and profit. He required a term of at least ten years in order to reimburse himself out of the improvements made by him."

It is therefore the opinion of this Court that Winifred Reibold has received her proportionate share of any benefits resulting from the replacement of the elevators by way of the net income from cash rents paid to the trustee during her enjoyment of the equitable estate and that no further adjustment between the parties should be made.

The third matter presented for decision is whether the estate of Winifred Reibold is entitled to reimbursement and contribution from the corpus for the amounts paid by lessee on the one hundred eighty-five thousand dollar ($185,000.00) mortgage.

Article IX of the lease entered into with The Elder & Johnston Company on December 24, 1936 provided:

"The property herein demised is now subject to a mortgage in the principal sum of $185,000.00. The Lessee agrees to negotiate a new mortgage with terms of repayment, beginning not later than two years following the date of this lease, said terms of repayment to be such that said mortgage will, by equal annual payments on the principal, be fully paid not less than three years before the expiration of this lease. It is recognized that the payment by the Lessee of the principal of this mortgage, as one of the considerations for the execution of this lease by the Lessors, will raise a question in the administration of the trusts which are being administered by the testamentary trustees who are parties to this lease, as to the treatment of these payments insofar as they increase the value of the corpus of the estate out of moneys which would otherwise have been paid in the form of income as additional rent had such payments on said mortgage not been made; and, therefore, it is understood that nothing in this lease shall prejudice the right of any such trustee, or of any beneficiary of any such trust, to apply to any court of competent jurisdiction to have such question determined and to have an adjustment made therefor as between life tenants and remaindermen. The Lessors agree to pledge the title to the real estate herein demised to secure such

mortgage loan; the mortgage to be executed by the Lessors herein as the owners of the premises, but said owners and Lessors will not be required to sign the note secured thereby. It is understood that Lessee shall be personally liable on said note and mortgage, and that Lessors shall not be personally liable on said note. The property is to be returned to the Lessors free from any mortgage lien, and the Lessee shall have the right to pay off said mortgage and note, and any part thereof, at any time.

"The present mortgage of $185,000.00 on the property herein leased shall be so refinanced by the Lessee, and shall be paid by the Lessee to the said present mortgagee, on or about April 1, 1937." (Emphasis ours.)

It appears from the evidence that The Elder & Johnston Company did negotiate a loan with the Equitable Life Assurance Society of the United States for the sum of one hundred eighty-five thousand dollars ($185,000.00) and signed a note and mortgage for this amount dated May 14, 1937 and paid off the then existing mortgage against the property. The note is a condition of the mortgage, and a copy of it is included in the mortgage. The lessors, including the trustee under the will of Louis S. Reibold, pledged the title to the Reibold Building to secure the mortgage loan and executed the mortgage but not the note.

It is provided in the note and mortgage that the mortgagor (lessee) will pay the sum of one hundred eighty-five thousand dollars ($185,000.00) with interest at four percent (4%) per annum "in two hundred and forty (240) regular equal monthly instalments, each for the sum of one thousand one hundred twenty-one and 06/100 dollars ($1,121.06) * * * one such instalment to be paid on the first day of each successive calendar month commencing on the first day of December, 1938, * * * And from the date of this note to November 1, 1938, both inclusive, the maker hereof promises to pay or cause to be paid interest on said principal sum at the rate of four per cent per annum, interest payable monthly."

The mortgagor (lessee) has, according to the evidence, paid all installments agreed to be paid to the mortgagee as set forth in the mortgage and note. As of August 1, 1944 the Elder & Johnston Company has paid thirty-nine thousand six hundred ninety-two dollars and sixty-nine cents ($39,692.69) on the principal of said mortgage and interest in a total sum of forty-eight thousand five hundred four dollars and thirty-five cents ($48,504.35).

It is a general rule of law that the corpus of a trust must bear the expense of payments made on account of the principal of a mortgage on the trust estate, in the absence of some contrary intention expressed by testator in his will. The rule seems to be equally applicable as between legal life tenants and remaindermen and equitable life beneficiaries of a trust and remaindermen. See 33 Am. Jur., Life Estates, Remainders and Reversions, Sec. 461; 87 A. L. R. 220; Bogert on Trusts, Sec. 802; Estate of Lair, 38 Cal. App. (2d) 737; Matter of Gabler, 140 Misc. (N. Y.) 581.

The will of Louis S. Reibold specifically provided that a mortgage on the Reibold Building shall be paid out of corpus. In Item Fifth (see page two of this opinion) the devise to the trustee of the one-fourth (¼) interest in the Reibold Building is "subject to such mortgages as shall be thereon at the time of my death, my proportion of the indebtedness secured thereby or so much of said indebtedness as shall be a charge against my estate to be paid out of my said title and interest in and to said real estate in this item described." Obviously the payment of the mortgage indebtedness by the lessee will increase the value of the corpus, and one-fourth (¼) of the monthly payments on principal made by the lessee to the Equitable Life Assurance Company to reduce the mortgage indebtedness is additional rent which constitutes income to the life beneficiary. Consequently the estate of Winifred Reibold is entitled to reimbursement from the remaindermen and to a lien against the corpus of the trust estate for one-fourth (¼) of all payments on the principal of the mortgage made by the lessee up to the time of Winifred Reibold's death in the same manner and for the same reason as a lien was decreed in the case of Reibold v Evans, supra. (see **page 266 of 28 Abs.**)

At this point some comment should be made by reason of the contention of J. Corlis Evans, the legal life tenant, that the principal payments made on the one hundred eighty-five thousand dollar ($185,000.00) mortgage indebtedness should be apportioned as additional rent on a day to day basis over the twenty-five year period of the lease. The Court rejects this contention because the lease and the mortgage conclusively establish the period during which the payments to the mortgagee are to be made. The period in either case is twenty years. This is in some respects no different than the provision of the lease which raises the annual rent at the end of ten years to a greater sum and provides for additional annual rents for each five-year period thereafter. Certainly it could not be contended that the total annual rents, including increased rentals not yet due and payable,

should be totaled and spread over the entire term of the lease. There was no additional rent in the form of principal payments to the mortgagee due until December 1, 1938, and the last payment considered additional rent will be due December 1, 1958. No additional income accrues during the two years before the principal payment begins and the three years after the last principal payment. This is in accordance with the express agreement of the parties in consideration of lessee's right to the use and occupancy of the premises for twenty-five years. Consequently this contention is rejected.

It would appear that the plaintiff expects to receive as additional income that part of the principal included in the installment paid by lessee on August 1, 1944 for the entire month of August. The Court holds that apportionment should be decreed between the estate of the equitable life beneficiary and the successive interests as to the payment made on principal on August 1, 1944 as of August 11, 1944, the date of Winifred Reibold's death. Apportionment is decreed in equity and in justice for the same reasons as set forth in deciding the first question. Certainly the estate of Winifred Reibold cannot here contend that the judicially determined intent wherein she is to be favored in determining net income would include apportionment in one case (cash rentals) and not in the other (mortgage principal payments as additional income).

It is insisted on behalf of the plaintiff that the note signed by the lessee provides for a different repayment method than is provided for in the lease; viz: two hundred and forty (240) regular equal **monthly** installments, each for the sum of one thousand one hundred twenty-one dollars and six cents ($1,121.06). Each of said installments includes interest at the rate of four percent (4%) per annum on the monthly decreasing balance of said principal sum which remains upaid after payment of each of the said monthly installments, the balance of such installment being a payment on account of the principal of said loan.

The plaintiff contends that, since the lessee had agreed to make equal **annual** payments on the principal of the new mortgage to be obtained and that such payments were to commence not less than two years after the date of the lease, had the lessees complied with the terms of the lease it would have paid on the principal of the new mortgage as additional rent a greater amount than was actually paid by the lessee up to the time of Winifred Reibold's death, one-fourth (¼) of which belongs to the estate of Winifred Reibold. If the lease had been followed, the equal annual principal payments would have been nine thousand two hundred and fifty dollars

($9250.00) per year. The Court finds that more principal would have been paid to the date of Winifred Reibold's death under the lease provision than under the mortgage note provision. Plaintiff argues that the remaindermen and the trustee in signing the mortgage departed from the terms of the lease and imputes to the trustee neglect in agreeing to this departure which deprives Winifred Reibold of income she should have received to the unjust enrichment of the remaindermen.

The Court does not agree with plaintiff's contention and emphatically rejects its argument as being completely fallacious.

The plaintiff has made much of testator's intention as being judicially determined by the case of Reibold v Evans, supra, which the Court in this opinion as unconditionally accepted. But other expressions of intent contained in the will are just as important for a correct decision of this point as is the judicially determined intent announced in Reibold v Evans. Upon examining Item Fifth of the will of Louis S. Reibold, it is clear that the trustee was given the power and authority (1) to lease the property of the trust and (2) "to borrow money on the strength of my estate and the credit of same, **to execute notes and mortgages, binding my estate and conveying real estate as described in this Item, or any part thereof, as security for the same whenever in its judgment it may be necessary or for the benefit of this trust so to do for the purpose of raising and procuring money * * * to pay any encumbrances on the real estate described in this Item,** which may be a lien thereon at the time of my death, * * * and **to execute such deeds, leases, and other instruments in writing as to my said Executor may seem best.**" (Emphasis ours.)

To charge the trustee of neglect in executing the mortgage wherein it, along with the remaindermen, agreed to abide by the provisions of the mortgage, is to say that the trustee had no power, authority, or discretion to execute the lease or the mortgage, both of which have undoubtedly been beneficial to the equitable life beneficiary. To make such a contention would be expressly contrary to the clear and obvious intent of the testator as expressed in his will. Furthermore, the lease provision contemplated a later agreement when the lessors, including the trustee, agreed with the lessee "to pledge the title to the real estate herein demised to secure such mortgage loan; the mortgage to be executed by the lessors herein as the owners of the premises * * *" When the lessors signed the mortgage with a copy of the note included as a condition, they entered into an agreement

which superseded any contrary provision in the lease. This act constitutes a waiver. The right to waive a minor provision of a lease such as a repayment clause is an incidental right attaching to the more general power granted in the will to lease the property, to borrow money, to execute notes and mortgages, and to convey the real estate as security.

It is therefore the Court's opinion that the mortgage note provision agreed to by the trustee and remaindermen which changed the repayment method in the lease constituted a waiver. Such a change is clearly authorized by the will of Louis S. Reibold and is well within the discretion of the trustee, the exercise of which is binding upon the equitable life beneficiary. Therefore, the estate of Winifred Reibold is not entitled to any part of the money which plaintiff contends would have been paid by lessee under the terms of the lease to the mortgagee but which was not paid because the lessee complied with the payment of its note, all of which was agreed to by the lessors (including the trustee) and the lessee in the mortgage.

The last contention to be considered is the interest, if any, and if allowed, the rate thereof, chargeable on the amounts paid on the mortgage principal to which payments the equitable life beneficiary is entitled as corpus income. The plaintiff contends that six percent (6%) interest should be charged from the time such payments on the mortgage principal were made. J. Corlis Evans, the holder of the legal life estate in a portion of the estate, and the trustee contend that this amount is too high and that four percent (4%) would be more equitable because the Court could take judicial notice that the return on the money, had Winifred Reibold had it, would not have been six percent (6%). The contention is also made on behalf of the remaindermen that no interest should be allowed for the reasons: (1) that they made no profit on the money paid to the mortgagee, (2) that the amount payable was uncertain, and (3) that the life beneficiary has neglected to avail herself of the rights given under the lease and has failed to ascertain her right as to whether she was entitled to the payments on principal as additional income.

In the case of **Cincinnati v Whetstone, 47 Oh St 196 at page 202** the court says:

"Indeed, it is evident from the general course of decision, that where one has lost his property, or the use of it, directly through the act of the defendant, the principle of adequate compensation will give interest as a necessary incident."

In **Lane & Bodley Co. v Day, 13 Oh Ap 476,** the syllabus of the court is as follows:

"Although not specifically mentioned in the statutes, interest may be allowed in rendering a judgment for the use of money wrongfully detained, in order to give full compensation for such use and detention."

In Western Casualty & Surety Co. v Meyer, 192 S. W. (2nd) 388, 301 Ky. 487, it was held that when money is paid for another person in satisfaction of a debt, the payment of interest is collectible as compensation for the advancement. Also see Laughlin v Boatmen's Nat. Bank of St. Louis, 189 S. W. (2nd) 974, Schermerhorn v Rolyan Corporation, 65 N. E. (2nd) 482, 328 Ill. App. 322; Schluter v Sell, et al, 194 S. W. (2nd) 125, (Texas Civ. App.).

The use of the money due the life beneficiary as income to pay the mortgage principal was an appropriation of this amount to the use and benefit of the remaindermen. If the lease had not made provisions for this item under construction and the remaindermen had obtained the necessary funds from other sources, they would undoubtedly have paid interest on such loans. On the other hand the equitable life beneficiary has lost the use and enjoyment of this money because of the action of the parties to the lease and should be compensated therefor by the remaindermen who have benefited thereby. While the Court feels that six percent (6%) is high, nevertheless §8305 GC, controls the rate of interest chargeable.

Furthermore in Reibold v Evans, supra, the Court allowed six percent (6%) interest to Winifred Reibold on that portion of conservancy assessments chargeable to corpus until paid. The Court cannot see any distinction between the payment of the principal of the mortgage out of income and the payment of conservancy assessments out of income as it pertains to the legal right to charge interest. It appears therefore that this matter has been judicially determined.

The Court therefore holds that the position of the plaintiff is well taken and that interest at six percent (6%) per annum on the payments made on mortgage principal due the estate of Winifred Reibold as set forth heretofore will be allowed until the payment thereof is made.

This disposes of all questions propounded by the Third National Bank and Trust Company of Dayton, Ohio as ancillary administrator with will annexed of the estate of Winifred Reibold, deceased, the equitable life beneficiary.

The Winters National Bank and Trust Company of Dayton, Ohio as administrator de bonis non with will annexed of the

estate of Louis S. Reibold, deceased, and as trustee under said will in its cross petition raises additional questions which will now be considered.

On April 29, 1925 by temporary order the Ohio inheritance taxes were determined by this Court in Louis S. Reibold's estate, and on May 9, 1925 the executor paid seven thousand three hundred fifty-one dollars and ninety-five cents ($7351.95) out of the general estate funds for and on behalf of the contingent remaindermen in fee under Item Fifth of the will of Louis S. Reibold, and three hundred sixteen dollars and fifty-five cents ($316.55) was paid in the same manner for and on behalf of the legal life tenant, J. Corlis Evans, said payments being made for the protection of Winifred Reibold, the residuary legatee.

The first question propounded therefore is what amount, if any, should be paid by the trustee to the plaintiff to reimburse Winifred Reibold's estate for the payment of inheritance taxes out of the general estate funds which was made by the fiduciary of Louis S. Reibold's estate under a temporary order and the amount of interest, if any.

The will of Louis S. Reibold provides as follows:

"ITEM FIRST: **I direct that my Executor hereinafter named shall out of my personal estate pay** my funeral expenses. the costs and expenses of administering my estate and all **estate and inheritance taxes, whether, federal or state. arising by reason of the devolution of so much of my estate, as shall pass under this my will to my wife, Winifred Reibold,** and all my just debts, excepting my debts secured by mortgage on the real estate described in Item Fifth or on any part of such real estate." (Emphasis ours.)

Item Fourth of the will of Louis S. Reibold bequeaths all of the testator's personal property to the executor in trust after the payments and bequests provided for in the first, second, and third items of his will and devises certain real estate specifically described in said item in trust. Out of the income from the trust estate the executor is directed to pay testator's mother, Emma M. Reibold, the sum of two hundred dollars ($200.00) a month for and during her life. The executor was also directed to pay the net income to testator's wife, Winifred Reibold, after the payments to his mother were deducted, until the 19th day of September, 1933 whereupon the executor was to convey and transfer all of said trust property, excepting so much as was to be retained

for the benefit of his mother, to Winifred Reibold to be hers absolutely.

The temporary order of this Court reads as follows:

"The Court further finds that the equitable remainders under Item 5th of the will of said decedent may vest hereafter in Frank B. Reibold, who is given certain other legacies amounting to $5,035.00; that therefore, the inheritance tax on said remainders is calculated at the highest possible rate and takes into consideratioon the other legacies to said Frank B. Reibold mentioned above; **that the tax payable on said remainders, being contingent, shall be paid by** The Dayton Savings and Trust Company, as **Executor** of the will of Louis S..Reibold, deceased **out of the general funds of the estate of said decedent for the protection of the rights of the widow of said decedent in the property passing under said Item Fifth, with the right reserved in said Executor to recover such payment upon the vesting of said remainders;"** (Emphasis ours.)

Both the plaintiff and trustee contend that the estate of Winifred Reibold is entitled to recover the amount paid by the executor for and on behalf of the remaindermen at six percent (6%) per annum from date of payment of such amount until date of its repayment.

The life tenant, J. Corlis Evans, contends that no part should be paid by him but that the amount to be recovered should all be borne by the remaindermen. He cites **Wellman v Cleveland Trust Co., 107 Oh St 267,** as authority.

The value of the life estate of J. Corlis Evans in one-fifth (1/5) of the one-fourth (¼) interest in the Reibold Building as well as the value of contingent remainders, all of which have now vested, were taxable successions. The case cited by Evans is not applicable as the inheritance taxes were paid out of funds belonging to Winifred Reibold by the executor of Louis S. Reibold's estate and not out of the corpus of the trust. Furthermore, the Court's order expressly reserves the right to the executor (now the Winters National Bank ond Trust Company of Dayton, Ohio) to recover such payments upon the vesting of the remainders. Since the vesting has now occurred by reason of the death of Winifred Reibold, the Winters National Bank and Trust Company as administrator de bonis non with will annexed of the estate of Louis S. Reibold is entitled to three hundred and sixteen dollars and fifty-five cents ($316.55) plus six percent (6%) interest per annum from J. Corlis Evans and seven thousand three hundred fifty-one dollars and ninety-five cents ($7351.95) plus six percent (6%) interest per annum from the remainder-

men. Said interest shall be charged from the date of payment by the original executor of the estate of Louis S. Reibold until repayment is made.

Upon receiving these amounts, the estate of Winifred Reibold is entitled to the same from Winters National Bank and Trust Company of Dayton, Ohio as the payment was made by the original executor in the first instance for her protection out of funds which should have gone to Winifred Reibold under Item Fourth of the will of Louis S. Reibold free of inheritance taxes.

The trustee next seeks the Court's determination whether taxes for the years 1943 and 1944 should be apportioned.

The applicable portion of the lease is as follows:

"Article IV.

The Lessee shall also pay, for the account of the Lessors, as and when the same become due and payable, all taxes, assessments and governmental charges, of every kind and nature, which have been, or may be, levied, assessed or charged against said premises after June, 1936, and during the entire term of this lease, or which have or will become due and payable during that period; * .* * **All of the payments described in this paragraph shall, to the extent that they are so made, be treated for all purposes as if so much additional rent had been paid by the Lessee to the Lessors, and the latter had made said payments out of such rents.**" (Emphasis ours.)

By the terms of the will of Louis S. Reibold, his trustee was to "pay the taxes" on the Reibold Building and to pay the "net income" thereon to his widow, Winifred Reibold, during her lifetime.

The Court finds that the lessee has paid the taxes for the years of 1943 and 1944 as they became due and payable.

The main question concerns the taxes paid for the year 1944 since Winifred Reibold died August 11, 1944 after the taxes became a lien on the land on the day preceding the second Monday in April and prior to October 1, that being the day on which the duplicate of taxes is required by law to be placed in the possession of the county treasurer. See §§5671 and 2583 GC.

The plaintiff contends that one-fourth (¼) the taxes for 1944 should be apportioned between the estate of Winifred Reibold and the remaindermen as of the date of her death and cites as authority **16 O. Jur. Estates, Sec. 59 page 444,** and In Re: Sturgis, 8 O. N. P. (N S) 486, together with cases from other

states. The legal life tenant, J. Corlis Evans, agrees with the contention of the plaintiff. The defendant trustee contends that one-fourth (¼) the taxes for 1944 must be borne by the life beneficiary under the authority of **Foulks v Talbott, 74 Oh Ap 271, 29 O. O. 434, 58 N. E. (2d) 696.**

Upon examining the Ohio authorities on the subject of apportionment of taxes, the Court finds that there are two theories that have been adopted by the Ohio courts. (1) **Hoglen v Cohan, 30 Oh St 436,** and **Magnolia Building & Investment Company v Sulzman, 57 Oh Ap 431, 11 O. O. 119,** are authority that taxes for any year accrue on October 1 insofar as money arising from judicial sales is concerned. In Robinson v Bowler, 18 C. C. (N S) 372, affirmed without opinion **88 Oh St 614,** which cites the Hoglen case, the Court held the estate of a life tenant who died October 24 liable for the payment of taxes. The tenor of this opinion seems to indicate that October 1 is the controlling date, but it is to be noted that the life tenant died on a date subsequent to the April lien date and October 1st. For an excellent treatise which concludes that October 1 is the controlling date, see Cincinnati Law Review, 359, "Accrual of the General Property Tax in Ohio," at page 390. (2) Foulks v Talbott, supra, is authority that an estate of a life tenant is liable for taxes for the entire year where he dies after the day preceding the second Monday in April and that this is true even though he died before the end of the year. This case distinguishes the Hoglen v Cohan and Magnolia Building & Investment Company v Sulzman cases on the ground that they relate only to the liability to pay taxes on land involved in judicial sales. The Court cites with approval Robinson v Bowler, supra, as authority for non-apportionment of taxes between successive estates. The plaintiff herein contends that this case was misinterpreted. The Court is inclined to agree with plaintiff's contention.

This Court is unable to perceive why the Court of Appeals in the Foulks case decided that the Hoglen case and the Magnolia Building and Investment Company case were not in point. True, they were construing rights under judicial sales, but they also construed the applicable statutes and held that taxes accrued and were due on October 1 of each year. The Robinson case does not stand as authority that the lien date is controlling or that the rule laid down by the Supreme Court previously does not stand. It seems to be authority only that December 20, the date on which the first annual installment of taxes is due and payable, is not the date that fixes the liability for the payment of taxes as between successive estates.

Had there been no lease provision intervening, the question of apportionment would be governed by operation of law and the arguments that have been presented by counsel would have been applicable; and it would have been necessary to determine whether the rule laid down by Foulks v Talbott is a correct statement of the law on this subject or whether, as the plaintiff contends, the case misinterprets the law as laid down by the case of Robinson v Bowler and Hoglan v Cohan. Such a determination would have been necessary to fix the taxes legally chargeable to the estate of Winifred Reibold since such taxes would have to be computed and deducted in order to arrive at her net income.

The Court is of the opinion that neither one of the above theories is applicable since the case at bar involves an equitable life beneficiary under a trust whose rights to income and liability for the expense of taxes are determined by a will and a subsequent agreement—a lease to which her trustee was a party.

One fundamental aspect of this case has been overlooked —Winifred Reibold did not pay the taxes and neither did the trustee nor the remaindermen. By agreement the parties, including the trustee, passed the duty to pay the taxes on to the lessee. The emphasized portion of the lease provision quoted above would indicate that the payments to be made by lessee should be treated for all purposes as if additional rent had been paid to lessors and that they, including the trustee, had paid the taxes out of such rents.

While the lease called this payment additional rent, a court must be governed by the substance rather than the form; actually the lessee had agreed to pay the taxes each year as additional consideration for the use and occupancy of the premises. The net effect of the lease provision was to free lessors, including trustee, from the payment of taxes each year if the lessee paid such taxes.

Winifred Reibold and the remaindermen have had the taxes paid for them by the lessee and will have them paid over the entire period of the lease. During Winifred Reibold's lifetime the taxes that were paid by lessee automatically released any other income from the lease to Winifred Reibold free from the obligation to pay any taxes from this income. The same is true of the owners of the other three-fourths (¾) of the Reibold Building. They received income from the lease with all taxes paid; otherwise their income would have been chargeable with the payment of taxes unless they permitted the taxes to become delinquent. Winifred Reibold's death does not change the legal effect of the agreement. The

1944 taxes were paid by lessee after Winifred Reibold's death as it had agreed to do. Assuming that it is the lien date which fixes the liability for the payment of taxes, do the parties now propose that Winifred Reibold should pay this entire expense for 1944 to the remaindermen when the evidence discloses that the lessee has paid the 1944 taxes? This would give the remaindermen a sum of money representing 1944 taxes, and at the same time they have had the lien for 1944 taxes paid off without expense to them. Would that be equity? Conversely, assuming that October 1 is the day that fixes the liability for payment of taxes, it could have been argued on behalf of the estate of Winifred Reibold that the remaindermen should pay this entire expense for 1944 to Winifred Reibold's estate since the evidence discloses that lessee has paid the 1944 taxes. This would give the estate of Winifred Reibold a sum of money representing the 1944 taxes in addition to having had the 1944 taxes paid off without expense to her estate. Would that be equity? Obviously the lease provision distinguishes this case from other Ohio cases cited because it has had the effect of relieving the parties of the obligation to pay taxes unless the lessee fails to pay. An apportionment on any other than a day to day basis (considering taxes as both income and expense to the trust) would have the effect of one or the other party receiving a sum of money and the taxes paid in addition thereto. If the Court would order Winifred Reibold to pay the 1944 taxes to the remaindermen, the remaindermen would be paid twice—once from money representing the 1944 taxes received from Winifred Reibold's estate and once by the tax payments made by lessee on December 20, 1944 and June 20, 1945. Such a holding would unjustly enrich the remaindermen at the expense of Winifred Reibold.

Therefore, the Court is of the opinion that the parties should be left in status quo as to 1943 and 1944 taxes in justice and in equity in order to avoid any of the parties' becoming unjustly enriched at the expense of the others.

The trustee also seeks the Court's direction as to the apportionment of assessments paid for 1944 other than conservancy assessments. Reference is again made to Article IV, supra, as it includes assessments as well as taxes. However, the will of Louis S. Reibold refers only to taxes which the Court has found are chargeable to Winifred Reibold in arriving at net income. It might be argued that it was Louis S. Reibold's intention as expressed in his will that assessments too would be such an expense as is deductible from the

income to the trust estate in order to arrive at Winifred Reibold's net income. However, an examination of authorities discloses that this would not necessarily be true as the kind of assessments—the permanency of assessments—would have to be considered to determine finally whether such an expense would be chargeable to the life beneficiary's income. If the assessments were in the nature of current expenses, they would no doubt be deductible; if not, apportionment on some equitable theory might result. See R. I. Hospital Trust Co. v Babbitt, 22 R. I. 113; Chambers v Chambers, 20 R. I. 370; Chamberlin v Gleason, 163 N. Y. 214; In Re: Miner's Estate, 201 Mich. 115. Also see this Court's opinion in Reibold v Evans, supra, in which several of the above cases were discussed.

No evidence was presented which discloses any facts concerning the nature of assessments which were paid; therefore, the Court assumes that the parties considered that assessments were the same as taxes and should be treated as such by the Court.

This being a declaratory judgment proceeding in which the trustee seeks the Court's declaration as to this matter in order for the trustee to wind up the trust estate, the Court cannot indulge in mere assumptions. The trustee is reserved the right to introduce evidence on this point for the Court's consideration.

Similarly, the parties seek the direction of the Court as to apportionment, if any, of Miami Conservancy assessments paid for 1943 and 1944.

Article IV of the lease provides that the lessee shall pay all "governmental charges, of every kind and nature, which have been, or may be levied, assessed or charged against said premises * * *"

The Court in Reibold v Evans, supra, affirmed by the Court of Appeals, decreed that Winifred Reibold was to be allowed thirty-two and twenty-eight hundredths percent (32.28%) of one-fourth (¼) part of all Miami Conservancy Assessments paid out of corpus; the balance was charged to Winifred Reibold as well as that part of conservancy assessments which represented maintenance expense and not improvements.

As to that part of conservancy assessments which was to be paid out of corpus, the Court decreed that Winifred Reibold's rights in the corpus would continue "until the termination of the life interest of said Winifred Reibold in said trust property."

Therefore this matter has been judicially determined, and Winifred Reibold's rights in the corpus for the conservancy

assessments paid for 1944 shall end August 11, 1944, the date of the termination of her equitable life estate.

The maintenance expense included in conservancy assessments and the sixty-seven and seventy-two hundredths percent (67.72%) of the cost of the improvement charged to Winifred Reibold as expense and paid by lessee are similar to taxes; and, since this amount has been paid by lessee in accordance with its agreement, the parties are left in status quo and no further adjustment is indicated.

The trustee next seeks the direction and advice of the Court in reference to the following matters. (1) What are the duties of the trustee as to the lien for Miami Conservancy assessments on the corpus of the trust existing in favor of the estate of Winifred Reibold under the decree in Reibold v·Evans, supra? (2) What are the duties of the trustee arising from the payments by the Elder & Johnston Company on account of mortgage principal? (3) When and under what conditions is the trustee required to convey the undivided one-fourth (¼) interest in the Reibold Building to the remaindermen as provided in the will of Louis S. Reibold, deceased? (4) When does the trust created under Item Fifth of the will of Louis S. Reibold, deceased, terminate?

Before deciding the above questions, the Court deems it necessary to set forth certain matters propounded by J. Corlis Evans in his cross-petition which have not already been disposed of and which are to some extent interrelated with the questions propounded by the trustee. J. Corlis Evans seeks a declaration of his rights as against the plaintiff and his co-defendants in remainder arising out of his interest under the will of Louis S. Reibold, deceased, and requests (1) an accounting of all sums received and disbursed by the trustee including such sums received and disbursed since the date of Winifred Reibold's death, (2) a termination of the trust, (3) contribution from an exoneration by his co-defendants in remainder for any liens or claims of the plaintiff against the interest of J. Corlis Evans arising out of the apportionment of income between the successive estates in said premises, (4) an apportionment between J. Corlis Evans and his co-defendants in remainder as to conservancy assessments, and (5) a determination of rights and liabilities between successive interests in one-fourth (¼) of the payments made by the lessee on account of the mortgage principal. All questions raised by J. Corlis Evans relative to proration of August and percentage rents, determination of the burden of taxes and assessments, payment for installation of elevators, and payment by the lessee on the principal of the mortgage as such·matters affect Winifred Reibold and the successive

estates under the will of Louis S. Reibold, deceased, have been disposed of. It is to be specifically noted that those rights and liabilities existing between J. Corlis Evans and his co-defendants in remainder have not been decided.

It appears from the evidence that the trustee has continued to collect rents after the death of Winifred Reibold and has in its possession a considerable sum of money which is being held pending the order of this Court.

By consent of the parties to this action entries were filed subsequent to the trial of this cause in which the Court ordered the trustee to pay forty thousand dollars ($40,000.00) out of this rental income to the estate of Winifred Reibold to pay off in part the conservancy assessment lien existing in favor of her estate against the corpus of the trust without prejudice to the rights of any of said parties to this action.

In the case of Reibold v Evans, supra, Case No. 78486-A in the Court, affirmed by the Court of Appeals of Montgomery County, Case No. 7583, supra, it was decreed that Winifred Reibold was entitled to be paid out of corpus of the trust the sum of sixteen thousand fifty-one dollars and sixty cents ($16,051.60) with interest and a further repayment out of corpus in the amount of thirty-two and twenty-eight hundredths (32.28%) of one-fourth (¼) of such further amounts with interest as have been paid or may hereafter be paid as and for Miami Conservancy assessments on the entire premises known as the Reibold Building excluding maintenance charges. A lien was granted Winifred Reibold, her heirs, executors, administrators, and assigns against the corpus for the amount due at the time of entering the decree and for those amounts of repayment due thereafter. The trustee was ordered to pay on said liens any amounts which may be hereafter ordered by the Court out of cash or securities in the corpus account of the trust estate. Winifred Reibold was denied the right to foreclose said liens against the corpus and was restrained from so doing until her death or remarriage in order to preserve the trust estate. The Court's decree was ordered recorded in the Recorder's office of Montgomery County as a lien against the real estate constituting the trust estate.

A decision as to when the trust terminates will answer most of the questions propounded by the trustee and J. Corlis Evans. The plaintiff contends that the trust cannot be terminated until payments have been made to the estate of Winifred Reibold of all amounts which she as the beneficiary is entitled to under the trust after which the trust property should be conveyed to the legal life tenant and the

remaindermen and the trust terminated pursuant to a decree of this court. The legal life tenant contends that he is looking solely to the trustee for his one-fifth (1/5) of one-fourth (¼) of rents not in dispute accruing since the death of Winifred Reibold and seeks the termination of the trust as of the date of Winifred Reibold's death.

In Item Fifth of the will of Louis S. Reibold, deceased, the testator expressly set forth:

"Upon the death of my said wife or upon her remarriage, I direct that my said Executor shall convey, transfer and assign all of said trust property under this Item as follows:" (Then follows the names of the persons to whom said estates are to be conveyed.) "* * * and I direct that no rights of the beneficiaries of the trust created in this Item, other than my said wife, shall vest prior to the death or remarriage of my said wife."

Accordingly the estate of the legal life tenant and the estates of the remaindermen vested upon the death of the equitable life beneficiary, Winifred Reibold. This testamentary trust was therefore one which is limited for a certain duration of time. In such a case the authorities both in this state and elsewhere uniformly hold that the trust terminates but that the trustees have such power as is necessary to complete and wind up the affairs of the trust estate. In Scott on Trusts, Vol. 3, Sec. 334, page 1823, the following general rule appears:

"Ordinarily by the terms of the trust it is provided how long the trust shall continue. In such a case the trust will be terminated at the expiration of the period fixed by the terms of the trust. The most common situation is that of a trust to pay the income to one beneficiary for life and on his death to make distribution of the principal. In such a case the trust will be terminated on the death of the life beneficiary."

See also 54 Am. Jur. 75; 26 R. C. L. 1210; **16 O. Jur. 550;** Lindsey et al v Zanoni et al, 6 O. C. C. 475; Ricket, trustee v Peck et al, 27 O. C. A. 101; Burkhardt v Maley, 24 N. P. (N S) 525.

Therefore, at Winifred Reibold's death the trust terminated by reason of the express provisions of the will of Louis S. Reibold, the Reibold devisees obtained a vested fee simple title in the trust property subject to J. Corlis Evan's

life estate, and J. Corlis Evans obtained a vested life estate in one-fifth (1/5) of the trust corpus.

Now that the Court has found that the trust terminated upon the death of Winifred Reibold and that the successive estates vested at her death, the Court can dispose of the remaining questions propounded by the trustee and J. Corlis Evans.

As to the lien of conservancy assessments in favor of the estate of Winifred Reibold, the trustee owes no duty to see that said lien is paid and discharged. The lien was created only against corpus, and the plaintiff has adequate protection now that Winifred Reibold is deceased as the order restraining her from enforcing her lien was limited so as to apply only during her lifetime. Winifred Reibold's right to receive cash income ceased with her death, but the amount of income which had accumulated at her death whether paid or not is an asset of her estate. Furthermore, the decree in Reibold v Evans gave her executor, administrator, and assigns the right to receive payment out of corpus and created the lien in their favor against corpus. There does not appear to be any corpus cash or securities held by the trustee from which the Court could order the liens discharged in whole or in part. Therefore, the cash rents not in dispute received by the trustee after Winifred Reibold's death are not charged with the conservancy assessment lien. The ancillary administrator with will annexed of the estate of Winifred Reibold may now in an appropriate action and in a proper court foreclose its lien against the Reibold Building.

The lien created by this opinion in favor of the estate of Winifred Reibold with respect to the mortgage principal payments made by lessee is the same as the conservancy assessment lien, and the trustee owes no further duty in respect to it. The plaintiff may enforce the payment of said lien against corpus in an appropriate proceeding, but the cash income not in dispute collected by trustee shall not be charged with the payment of said lien.

In answer to trustee's third question concerning when and under what conditions the trustee shall convey the corpus to the remaindermen, it may be said that while it is not clear in Ohio whether or not title to trust property vests automatically in the holders of the succeeding estates (see **40 O. Jur. Trusts, Sec. 242, Page 553; 50 Am. Jur. Trusts, Sec. 98, Page 90; Bogert, Trusts and Trustees, Vol. I, Sec. 206, Page 588 and Sec. 208, Page 603 et seq**) or whether a conveyance by the trustee is necessary, it does appear settled that the trust terminates at the time specified in the trust instrument. The Court sees little value in this case in analyzing the effect,

if any, of the Statute of Uses on trusts in Ohio. While it is this Court's opinion that no conveyance is necessary to create the estates which vested in accordance with the express direction of Louis S. Reibold in Item Fifth of his will, nevertheless in view of the testator's express direction to his executor to convey and in order to establish a record title, the trustee should deliver a deed to the persons entitled to the corpus of the trust as soon as the affairs of the trust can be completely wound up.

The trustee shall, within sixty days after the final order of this Court is approved and journalized, file an account of all sums received and disbursed by it since its last accounting including such sums received and disbursed since the date of Winifred Reibold's death.

Subject to apportionment of the cash rent received for the month of August, 1944 and the cash rent based on a percentage of gross sales for 1944 as heretofore ordered, the trustee shall pay to the remaindermen, including J. Corlis Evans, the income which has accumulated since Winifred Reibold's death. The accumulated income is not corpus; and, since the trust terminated at Winifred Reibold's death, all of such income belongs to those whose estates vested August 11, 1944. J. Corlis Evans is entitled to one-fifth (1/5) of one-fourth (¼) of the income received by the trustee. In order for the trustee to make a proper distribution of such income to the parties entitled thereto, the trustee in computing income shall include the forty thousand dollars ($40,000.00) paid out in partial payment of the conservancy assessment lien as if said payment had not been made; thus J. Corlis Evans will receive one-fifth (1/5) of all income not in dispute since Winifred Reibold's death. While this Court has not specifically decreed contribution from and exoneration by the defendant remaindermen for the liens or claims of the plaintiff against the interest of J. Corlis Evans arising out of apportionment of income between successive estates, the effect of ordering one-fifth (1/5) of one-fourth (¼) of all rents received by the trustee since Winifred Reibold's death paid to J. Corlis Evans is to free the income belonging to J. Corlis Evans from all liens or claims of the plaintiff on the ground that the trust terminated and his legal life estate vested. The Court's decision is rendered without prejudice to any action between the defendant remaindermen and J. Corlis Evans as to any burdens each must bear by reason of the payment of the liens existing against the corpus in favor of the estate of Winifred Reibold. This holding leads the Court to a determination of the last two matters raised by J. Corlis Evans

concerning the apportionment between him and his co-defendants in remainder as to conservancy assessments and mortgage principal payments made by lessee.

In deciding the questions raised by the parties to this proceeding, it should be noted that the Court had determined all matters of apportionment, if any existed, between the plaintiff (estate of Winifred Reibold) and the successive estates whether they involved J. Corlis Evans or his co-defendants in remainder. But the Court is of the opinion that it does not have jurisdiction to determine rights and liabilities which may exist solely between J. Corlis Evans and his co-defendant remaindermen.

Probate courts are not courts of general jurisdiction but are courts of limited judisdiction and have only such powers as are set out in the **Constitution of. Ohio in Article IV, Section 8** and subsequent legislative enactments. Such an enactment is **§10501-53 GC,** which provides in part:

"* * * the probate court shall have jurisdiction:
* * *

4. To appoint and remove guardians and testamentary trustees, direct and control their conduct, and settle their accounts;"

While the last paragraph of this Section provides that "the probate court shall have plenary power at law and in equity fully to dispose of any matter properly before the court, unless the power is expressly otherwise limited or denied by statute," this does not give the probate court jurisdiction to determine rights and liabilities as between a legal life tenant and his remaindermen in fee whose estates have vested and whose rights are no longer controlled by the testamentary instrument which created the estate. The Court in this case had the power and did construe the will of Louis S. Reibold, deceased, in order to determine when the estates vested, whether the trust terminated, and a number of other questions propounded by the parties. Furthermore, the Court had the power to adjudicate and did adjudicate all questions which involve the proper administration of the trust and all those rights and liabilities created by the trust as between the life beneficiary and the successive estate interests. J. Corlis Evans was properly granted the right to an accounting and an apportionment of the August and percentage rents. The trustee was also ordered to pay J. Corlis Evans and the other remaindermen their respective shares of the income received from the lessee since the date of the death of Winifred Reibold. But all matters which call for an adjustment between the

legal life tenant and the owners in fee of said premises including any question of apportionment of taxes, assessments, conservancy assessments, installation of elevators, and apportionment of principal payments on the mortgage are not involved in either the construction of the will, the settlement of the trustee's accounts, or the proper administration of the trust and should be settled by a court of general jurisdiction.

Since the parties have by consent entries authorized payment of a portion of the conservancy assessment lien out of income collected by the trustee, it may be that the parties in interest will agree that the trustee use the balance of the income collected by it to discharge the balance of the conservancy assessment lien and the lien granted for the principal payment of the mortgage. The Court will permit the trustee to make such an expenditure to avoid the necessity of the plaintiff foreclosing its liens if all the parties in interest agree to the use of such income for said purpose.

Costs will be shared equally between the estate of Winifred Reibold and the defendants in remainder. Of the one-half (½) to be borne by the remaindermen, J. Corlis Evans shall bear one-fifth (1/5) of said costs and his co-defendants in remainder the balance in proportion to their respective interests.

Counsel may draw an appropriate decree and submit the same for the Court's approval.